# No. 25-842

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

---

**WENDY LISSETH DEL CID-BANTES,
JOSUE ALEXANDER MONZON-DEL CID,**
**Petitioners,**

**v.**

**PAMELA J. BONDI,
United States Attorney General,
Respondent.**

---

**ON PETITION FOR REVIEW OF THE DECISION OF
THE BOARD OF IMMIGRATION APPEALS
A203-500-805/806**

---

**BRIEF FOR RESPONDENT**

---

**BRETT A. SHUMATE**
Assistant Attorney General
Civil Division


**SHERI R. GLASER**
Acting Assistant Director
Office of Immigration Litigation

**KRISTEN H. BLOSSER**
Trial Attorney
Office of Immigration Litigation
United States Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 305-1060

Attorneys for Respondent

## **STATEMENT REGARDING ORAL ARGUMENT**

Respondent believes that oral argument is unnecessary in this case. The briefs and record adequately present the facts and legal arguments. Should the Court consider oral argument appropriate, counsel for respondent requests an amount of time equal to that afforded to the petitioner.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF THE ISSUES ............................................................. 3

STATEMENT OF THE CASE AND RELEVANT FACTS ..................... 4

    I.    Initiation of Removal Proceedings ................................................ 4

    II.   Petitioner's Merits Hearing ........................................................... 5

    III.  Petitioner's Written Declaration ................................................... 7

    IV.  The Immigration Judge's Decision ............................................... 7

    V.   The Board's Decision ................................................................... 10

SUMMARY OF THE ARGUMENT .................................................... 11

ARGUMENT ...................................................................................... 12

    I.    Scope and Standard of Review .................................................... 12

    II.   Legal Framework and Burden of Proof ....................................... 13

    III.  Petitioners Abandoned Any Challenge to the Agency's Dispositive Past Persecution and Well-Founded Fear Findings By Failing To Meaningfully Address Them in their Opening Brief ...................... 15

    IV.  Substantial Evidence Supports the Agency's Denial of Petitioner's Application for Asylum and Withholding of Removal ................... 19

        A.  Substantial Evidence Supports the Agency's Dispositive Determination that Petitioner Failed to Establish a Nexus to a Protected Ground ..................................................................... 19

i

B. Controlling Law and Substantial Evidence Supports the Agency's Conclusion That Petitioner's Proposed Particular Social Groups Are Not Legally Cognizable ...................................................... 27

1. Petitioner's Proposed Groups of "Educated Guatemalan Women" and "Educated Guatemalan Women with Young Children" Are Not Legally Cognizable ..................................................... 30

2. Petitioner's Proposed Group of "Guatemalan Women with Husbands in the United States" Is Not Legally Cognizable ....... 33

CONCLUSION ................................................................. 36

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF IDENTICAL TEXT AND VIRUS CHECK1

CERTIFICATE OF SERVICE

ii

# TABLE OF AUTHORITIES

## CASES

*Alom v. Whitaker*,
910 F.3d 708 (2d Cir. 2018).......................................................16, 17

*Ameen v. Holder*,
450 F. App'x 35 (2d Cir. 2011) ...................................................... 26

*Bhagtana v. Garland*,
93 F.4th 592 (2d Cir. 2023)............................................................ 18

*Can v. Holder*,
606 F. App'x 610 (2d Cir. 2015)..................................................... 21

*Carmona v. Holder*,
457 F. App'x 32 (2d Cir. 2012) ...................................................... 34

*Castro v. Holder*,
597 F.3d 93 (2d Cir. 2010)............................................................. 14

*Debique v. Garland*,
58 F.4th 676 (2d Cir. 2023)........................................................16, 17

*Delgado Coro v. Bondi*,
No. 24-1636, 2025 WL 2416198 (2d Cir. Aug. 21, 2025)..................... 18

*Diallo v. INS*,
232 F.3d 279 (2d Cir. 2000)........................................................... 13

*Galina v. INS*,
213 F.3d 955 (7th Cir. 2000).......................................................... 15

*Garcia-Aranda v. Garland*,
53 F.4th 752 (2d Cir. 2022)................................................. 20, 23, 24

*Garland v. Ming Dai*,
593 U.S. 357 (2021)......................................................... 13, 19, 24

*Gonzalez-Benitez v. Lynch*,
  653 F. App'x 69 (2d Cir. 2016) ........................................................ 20

*Gonzalez-Carias v. Garland*,
  855 F. App'x 52 (2d Cir. 2021) ........................................................ 25

*Gonzalez-Polanco v. Rosen*,
  839 F. App'x 639 (2d Cir. 2021)....................................................... 21

*Hong Fei Gao v. Sessions*,
  891 F.3d 67 (2d Cir. 2018)............................................................... 14

*INS v. Bagamasbad*,
  429 U.S.................................................................................18, 27, 28, 30

*INS v. Elias-Zacarias*,
  502 U.S. 478 (1992)....................................................................13, 23

*INS v. Stevic*,
  467 U.S. 407 (1984)......................................................................... 14

*Jian Hui Shao v. Mukasey*,
  546 F.3d 138 (2d Cir. 2008)............................................................. 23

*Jiang v. Bureau of Citizenship and Immigration Services*,
  520 F.3d 132 (2d Cir. 2008)............................................................. 12

*Lecaj v. Holder*,
  616 F.3d 111 (2d Cir. 2010)............................................................. 27

*Li v. INS*,
  453 F.3d 129 (2d Cir. 2006)............................................................. 13

*Lin Zhong v. U.S. Dep't of Justice*,
  480 F.3d 104 (2d Cir. 2007)............................................................. 25

*Meas v. Mukasey*,
  292 F. App'x 78 (2d Cir. 2008) ...................................................15, 18

iv

*Mei Fun Wong v. Holder*,
  633 F.3d 64 (2d Cir. 2011)....................................................... 18

*Mejia-Ruiz v. Wilkinson*,
  846 F. App'x 67 (2d Cir. 2021) ................................................ 27

*Melgar de Torres v. Reno*,
  191 F.3d 307 (2d Cir. 1999)................................................ 14, 24

*Nasrallah v. Barr*,
  140 S. Ct. 1683 (2020) ........................................................... 13

*Niazou v. Holder*,
  393 F. App'x 825 (2d Cir. 2010)............................................... 18

*Norton v. Sam's Club*,
  145 F.3d 114 (2d Cir. 1998)...................................................... 2

*O'Rourke v. United States*,
  587 F.3d 537 (2d Cir. 2009)..................................................... 20

*Paloka v. Holder*,
  762 F.3d 191 (2nd Cir. 2014) ............................................ 28, *passim*

*Quintanilla-Mejia v. Garland*,
  3 F.4th 569 (2d Cir. 2021)....................................................... 35

*Quituizaca v. Garland*,
  52 F.4th 103 (2d Cir. 2022).................................................. 14, 21

*Ramirez v. Barr*,
  773 F. App'x 638 (2d Cir. 2019).............................................. 31

*Scarlett v. Barr*,
  957 F.3d 316 (2d Cir. 2020)..................................................... 14

*Singh v. Garland*,
  11 F.4th 106 (2d Cir. 2021)..................................................... 14

*Surinder Singh v. Board of Immigration Appeals*,
435 F.3d 216 (2d Cir. 2006).................................................................. 18

*Ucelo-Gomez v. Mukasey*,
509 F.3d 70 (2d Cir. 2007)...............................................21, 28, 29, 31

*Ud Din v. Garland*,
72 F.4th 411 (2d Cir. 2023)................................................................. 20

*United States v. Graham*,
51 F.4th 67 (2d Cir. 2022)................................................................... 16

*United States v. Sineneng-Smith*,
140 S. Ct. 1575 (2020) ....................................................................... 16

*Vanegas-Ramirez v. Holder*,
768 F.3d 226 (2d Cir. 2014)................................................................ 14

*Varela-Lopez v. Sessions*,
695 F. App'x 1 (2d Cir. 2017) ............................................................ 21

*Wala v. Mukasey*,
511 F.3d 102 (2d Cir. 2007)................................................................ 12

*Xiao Ji Chen v. U.S. Dep't of Justice*,
471 F.3d 315 (2d Cir. 2006)..........................................................20, 26

*Yu v. Holder*,
693 F.3d 294 (2d Cir. 2012)................................................................ 19

*Yueqing Zhang v. Gonzales*,
426 F.3d 540 (2d Cir. 2005)................................................................ 2

*Zhao v. Wilkinson*,
844 F. App'x 389 (2d Cir. 2021)......................................................... 18

## <u>ADMINISTRATIVE DECISIONS</u>

*Matter of A-B-,*
  27 I. & N. Dec. 316 (A.G. 2018)......................................10, 11
*Matter of A-B-,*
  28 I. & N. Dec. 199 (A.G. 2021)......................................10, 11

*Matter of Acosta,*
  19 I. & N. Dec. 211 (BIA 1985) ......................................28, 33

*Matter of A-M-E- & J-G-U-,*
  24 I. & N. Dec. 69 (BIA 2007) ........................................ 28

*Matter of Burbano,*
  20 I. & N. Dec. 872 (BIA 1994) ....................................... 10

*Matter of C-I-R-H-,*
  *& H-S-V-R-,* 29 I. & N. Dec. 114 (BIA 2025).................................... 25

*Matter of M-E-V-G-,*
  26 I. & N. Dec. 227 (BIA 2014) .......................................28, 29, 32, 35

*Matter of Mogharrabi,*
  19 I. & N. Dec. 439 (BIA 1987) .......................................28, 34

*Matter of W-G-R-,*
  26 I. & N. Dec.......................................................29, 32

*Matter of W-Y-C- & H-O-B-,*
  27 I. & N. Dec. 189 (BIA 2018) .......................................11, 25

## <u>STATUTES</u>

### Immigration and Nationality Act of 1952, as amended:

Section 101(a)(42),
  8 U.S.C. § 1101(a)(42) ................................................ 15

Section 101(a)(42)(A),
  8 U.S.C. § 1101(a)(42)(A) ............................................ 14

Section 208(b)(1),
  8 U.S.C. § 1158(b)(1)............................................................... 13

Section 208(b)(1)(B)(i),
  8 U.S.C. § 1158(b)(1)(B)(i).................................................. 13, 14, 20

Section 212(a)(6)(A)(i),
  8 U.S.C. § 1182(a)(6)(A)(i)......................................................... 4

Section 241(b)(3)(A),
  8 U.S.C. § 1231(b)(3)(A)........................................................... 14

Section 242,
  8 U.S.C. § 1252.................................................................... 2

Section 242(b)(1),
  8 U.S.C. § 1252(b)(1).............................................................. 2

Section 242(b)(2),
  8 U.S.C. § 1252(b)(2).............................................................. 3

Section 242(b)(4)(B),
  8 U.S.C. § 1252(b)(4)(B)...................................................... 13, 19

Section 242(d)(1),
  8 U.S.C. § 1252(d)(1)............................................................. 20

## **REGULATIONS**

8 C.F.R. §§ 208.16 ................................................................... 2

8 C.F.R. §§ 208.17 ................................................................... 2

8 C.F.R. §§ 208.18 ................................................................... 2

8 C.F.R. §§ 1003.1(b)(3) ............................................................ 2

8 C.F.R. §§ 1208.16................................................................... 2

8 C.F.R. §§ 1208.17................................................................................ 2

8 C.F.R. §§ 1208.18................................................................................ 2

8 C.F.R. §§ 1240.15................................................................................ 2

**25-842**

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

---

**WENDY LISSETH DEL CID-BANTES,
JOSUE ALEXANDER MONZON-DEL CID,**
**Petitioners,**

**v.**

**PAMELA J. BONDI,**
**United States Attorney General,**
**Respondent.**

---

## BRIEF FOR RESPONDENT

---

## <u>STATEMENT OF JURISDICTION</u>

This is an immigration case in which Petitioner Wendy Lisseth del Cid-Bantes ("Petitioner" or "Ms. Cid-Bantes") and her minor child seek review of a March 24, 2025 decision of the Board of Immigration Appeals ("Board"). Certified Administrative Record ("AR") 3-5. The Board dismissed their appeal of an immigration judge's February 10, 2020 decision denying Ms. Cid-Bantes' application for asylum, withholding of removal, and protection under the regulations implementing the United Nations Convention Against Torture and other Cruel, Inhuman or Degrading

Treatment or Punishment ("CAT")[1] and ordering Petitioners removed to Guatemala.[2]  AR 3-5, 73-94.  The Board's jurisdiction arose under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15, which grant it appellate jurisdiction over decisions of immigration judges in removal proceedings.

This Court's jurisdiction is governed by 8 U.S.C. § 1252, which provides for judicial review of final orders of removal.  The petition for review was timely filed on April 9, 2025, within thirty days of the Board's March 24, 2025 decision.  *See* 8 U.S.C. § 1252(b)(1).  Venue is proper in

---

[1]  United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85, G.A. Res. 39/46, 39th Sess., U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/39/51 (1984).  In the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA") § 2242, Congress authorized the promulgation of regulations to implement the CAT.  Such implementing regulations promulgated by the Attorney General to govern the Board and immigration courts are found at 8 C.F.R. §§ 1208.16-1208.18, and those promulgated by the Secretary of Homeland Security to govern the Department of Homeland Security and its agencies are found at 8 C.F.R. §§ 208.16-208.18.

[2]  Petitioner does not challenge the agency's determination that she failed to establish eligibility for CAT protection in her opening brief filed with this Court.  *Compare* AR 4, *and* AR 85-86, *with* Petitioner's Opening Brief ("Pet's Br.") 22-60.  She has accordingly waived consideration of this application and Respondent will therefore not meaningfully discuss it further.  *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 541 n.1 (2d Cir. 2005) (internal citation omitted) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.") (quoting *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998)); Fed. R. App. P. 28(a)(8)(A) (to merit appellate review, an appellant must sufficiently develop his arguments, "and [her] reasons for them with citations to the authorities and parts of the record on which [she] relies").

this Court because the immigration proceedings were completed within this Judicial Circuit in New York, New York. *See* 8 U.S.C. § 1252(b)(2); AR 73, 518, 534.

## STATEMENT OF THE ISSUES

I.  Whether the Court should deny the petition for review where Petitioner waived or abandoned any challenge to the agency's past persecution and well-founded fear determinations by failing to advance any argument on these issues in her opening brief.

II.  Alternatively, whether substantial evidence supports the agency's denial of Petitioner's application for asylum and withholding of removal because she failed to establish a nexus to a statutorily protected ground where the harm she suffered or feared was by private criminal actors who were exclusively motivated by economic and extortionary reasons.

III.  Whether substantial evidence supports the agency's denial of Petitioner's application for asylum and withholding of removal where she did not present a legally cognizable particular social group.

3

## STATEMENT OF THE CASE AND RELEVANT FACTS

### I.   Initiation of Removal Proceedings

Petitioners, natives and citizens of Guatemala, entered the United States on or about March 15, 2019, without being admitted or paroled after inspection by an Immigration Officer.  AR 518-19, 534-35.  On March 18, 2019, the Department of Homeland Security ("DHS") served Petitioners with Notices to Appear ("NTAs") charging them with removability under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i), as aliens present in the United States without being admitted or paroled.  *Id.*  On August 13, 2019, Petitioners, through counsel, admitted the factual allegations contained in the NTAs and conceded removability as charged.  AR 115-16.  Ms. Cid-Bantes sought relief and protection from removal by filing an application for asylum, withholding of removal, and CAT protection.[3]  AR-431-43.  She based her claim on her political opinion and membership in three proposed particular social groups consisting of: 1) educated Guatemalan women; 2) educated Guatemalan women with young children; and 3) Guatemalan women with husbands in the United States.  AR 453.

---

[3]  Ms. Cid-Bantes' minor child was listed as a derivative beneficiary on her application for asylum and did not file a separate application for withholding of removal or CAT protection.  *See* AR 432.

## II.     Petitioner's Merits Hearing

Ms. Cid-Bantes was the sole witness to testify in support of her application. She testified that she feared returning to Guatemala because she was threatened and extorted by gang members. AR 144. On approximately September 14, 2018, Ms. Cid-Bantes was threatened and extorted for the first time. AR 146. She received a written note from gang members demanding that she pay 30,000 quetzales and threatening to harm her and her son if she failed to pay. AR 147. Ms. Cid-Bantes testified that she did not respond to the note and instead left her home and went to stay with her mother-in-law. AR 147-48. Approximately fifteen days later, Ms. Cid-Bantes briefly returned to her home where she received a second threatening letter which mentioned her husband, who lived in the United States, and again threatened to harm Ms. Cid-Bantes and her son if the extortion demand was not paid. AR 151.

Ms. Cid-Bantes believed that the gang might have targeted her for a number of reasons. She testified during direct examination that they went after her "[b]ecause [she is] a woman, because [she] was alone." AR 150. But during cross-examination, she indicated that gang members may have targeted her because they observed that she was renovating her home, suggesting that she had disposable income. AR 157. She further confirmed

5

that she believed another reason the gang targeted her was because she owned a motorcycle. AR 157-58 ("For them it's a sign that we have money"). She stated that gangs target "the people that have money and especially women . . . women that are alone," but also confirmed that gangs extort "everyone." AR 158. Ms. Cid-Bantes testified that she did not report the threats to police because she did not believe the police would help and was afraid that the police would tell gang members about her report. AR 153-54.

Ms. Cid-Bantes lived at her mother-in-law's home for approximately six months without incident before leaving Guatemala. AR 168. When asked about whether she could relocate to a different city in Guatemala, Ms. Cid-Bantes indicated that it would be difficult to relocate because she didn't know anyone and did not have the money to do so. AR 170-71. She also testified generally that she does not have confidence in the government and expressed concerns about "discrimination against women," noting that young women are frequently asked about their children during job interviews. AR-156.

6

### III. Petitioner's Written Declaration

Ms. Cid-Bantes submitted a written declaration in support of her application for relief and protection. AR 419-23. She wrote that she believed gang members noticed when she began renovating her home because "when a person in [her] country has a visibly comfortable and slightly arranged house, it is synonymous that he or she has resources to pay for extortion without any problem." AR 419. She also believed that gang members noticed that she owned a motorcycle, "dressed every day in an elegant suit," and opined that these factors combined to make her "the perfect target for them." AR 420.

### IV. The Immigration Judge's Decision

On February 10, 2020, an immigration judge issued an oral decision denying Petitioner's application for asylum, withholding of removal, and CAT protection. AR 73-94. The immigration judge concluded that Petitioner failed to meet her burden of proof to establish eligibility for relief or protection from removal. AR 78-86. To begin, the immigration judge determined that Petitioner failed to demonstrate that her three proposed particular social groups were legally cognizable. AR 78-80. Regarding Petitioner's proposed group of "educated Guatemalan women," the immigration judge observed that there was insufficient evidence to indicate

7

that this proposed group is socially distinct within Guatemalan society and that the group was not defined with the requisite particularity because it lacked clear boundaries for determining membership. AR 79. The immigration judge also determined that Petitioner's proposed group of "educated Guatemalan women with young children," is not particular, contained characteristics that are not immutable, and was not socially distinct in Guatemalan society. AR 78-79. Additionally, the immigration judge concluded that Petitioner's third proposed group of "Guatemalan women with husbands in the United States" was not immutable, sufficiently particular, or socially distinct.[4] AR-78-79.

Even assuming Petitioner's proposed particular social groups were legally cognizable, the immigration judge still denied her application for asylum and withholding of removal because she failed to establish that any harm she suffered or feared was or would be on account of a protected ground. AR 80. The immigration judge found that the gang was motivated to target Ms. Cid-Bantes "because she was perceived by the gang as having income" that they could extort in pursuit of "economic or financial" gain.

---

[4] The immigration judge also observed that to the extent Petitioner intended this third proposed group to function as a proxy for a group of individuals who are perceived as wealthy, such a group would not satisfy the particularity requirement. AR 79.

AR 80. The immigration judge observed that she was not targeted or extorted prior to 2018 and considered it significant that her written declaration stated that she came to the gang's attention because she rode a motorcycle to work, went to work dressed in an "elegant suit," and had begun renovating her home. AR 81. The immigration judge reasoned that "these were all things that brought her to the attention of the gang because it would have been a display of extra income that the gang could take advantage of in attempting to extort money from her." AR 81. In sum, the immigration judge determined that there was insufficient evidence to indicate that Ms. Cid-Bantes was targeted based on her membership in her proposed social groups. AR 80-81.

The immigration judge also determined that Petitioner failed to demonstrate that she suffered past persecution where she did not establish that the harm she suffered was inflicted by an actor that the government was unable or unwilling to control and where the harm she suffered did not rise to the level of persecution. AR 81-83. Regarding Petitioner's fear of future persecution, the immigration judge observed that Petitioner failed to establish a nexus between the harm she fears and a protected ground. AR 84. The immigration judge also noted that Petitioner resided for six months at her mother-in-law's home with no apparent incident or harm, which

9

indicated that she could safely relocate within Guatemala. AR 84. Finally, the immigration judge denied Petitioner's request for CAT protection.[5] AR 85-86.

## V. The Board's Decision

Petitioners appealed to the Board and on March 24, 2025, the Board dismissed the appeal. AR 3-5, 12-32, 46-48. After considering the evidence of record and Petitioner's appellate arguments, the Board adopted and affirmed the immigration judge's decision. AR 4 (citing *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994)). The Board determined that Petitioner failed to identify any clear error of fact in the immigration judge's decision and did not raise any argument on appeal to warrant disturbing the immigration judge's denial of asylum, withholding of removal, and CAT protection. AR 4.

The Board rejected Petitioner's argument for remand following the vacatur of *Matter of L-E-A-*, 27 I. 7 N. Dec. 581 (A.G. 2019) ("*L-E-A- II*"), *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018) ("*A-B- I*"), and *Matter of A-B-*, 28 I. & N. Dec. 199 (A.G. 2021) ("*A-B- II*"). The Board determined remand was unnecessary because it considered current case law and upheld

---

[5] As the Court should not consider Petitioner's application for CAT protection, since she does not challenge it in her opening brief, Respondent does not discuss this decision in detail. *See supra* n.2.

the immigration judge's decision based on issues unrelated to the immigration judge's reliance on *Matter of A-B- I.* AR 4. Finally, the Board declined to consider Petitioner's newly raised particular social group where Petitioners were represented by counsel before the immigration judge but failed to advance this additional ground in immigration court. AR 4 (citing *Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. 189, 190 (BIA 2018)); *see* AR 18 (Petitioner's brief to the Board raising new proposed group of "Single Mothers in Guatemala").

## SUMMARY OF THE ARGUMENT

The Court should deny the petition for review. First, the Court may deny the petition for review without any need to reach the merits because Petitioner waived or abandoned any challenge to the agency's determinations that she failed to establish that she suffered past harm rising to the level of persecution and that she did not establish a well-founded fear of future persecution where she could safely and reasonably relocate elsewhere in Guatemala. Taken together, these two determinations are dispositive of Petitioner's eligibility for asylum and withholding of removal and her failure to challenge them in the opening brief is fatal to her claim.

Second, should the Court reach the issue, it should deny the petition for review because substantial evidence supports the agency's dispositive

11

nexus determination where Petitioner testified that gang members targeted her for extortion because they believed that she could afford to pay their extortion demands after taking notice of the fact that she began renovating her home, rode a motorcycle, and wore an elegant suit to work every day.

Third, the Court should deny the petition for review because substantial evidence supports the agency's conclusion that Petitioner's proposed particular social groups are not legally cognizable where they are either not composed of individuals who share a common immutable trait, are not sufficiently particular, or there is insufficient evidence indicating that they are perceived as socially distinct in Guatemalan society.

## ARGUMENT

### I.    Scope and Standard of Review

Where, as here, the Board adopts and affirms the immigration judge's decision and offers additional commentary, the Court "review[s] the decision of the [immigration judge] as supplemented by the B[oard]." [6] *Jiang v. Bureau of Citizenship and Immigration Services*, 520 F.3d 132, 135 (2d Cir. 2008); *Wala v. Mukasey*, 511 F.3d 102, 105 (2d Cir. 2007).

---

[6] To the extent that Petitioner's opening brief argues that the Board's decision adopting and affirming the immigration judge's decision "create[d] fatal ambiguity" by failing to expressly address the legal cognizability of Petitioner's proposed particular social groups, her argument lacks merit and is notably unsupported by citation to any legal authority. *See* Pet's Br. 25.

This Court reviews the agency's factual findings under the "highly deferential" substantial evidence standard. *Garland v. Ming Dai*, 593 U.S. 357, 365 (2021) (quoting *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020)); *see* 8 U.S.C. § 1252(b)(4)(B). This Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Li v. INS*, 453 F.3d 129, 135 (2d Cir. 2006). Under the substantial evidence standard, the immigration judge's factual findings are treated as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Ming Dai*, 593 U.S. at 365 (quoting *Nasrallah*, 140 S. Ct. at 1692; 8 U.S.C. § 1252(b)(4)(B)); *see INS v. Elias-Zacarias*, 502 U.S. 478, 484 (1992). Therefore, the Court will uphold these factual findings as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Diallo v. INS*, 232 F.3d 279, 287 (2d Cir. 2000).

## II.  Legal Framework and Burden of Proof

Under 8 U.S.C. § 1158(b)(1), the Attorney General has the discretion to grant asylum to "refugees." *Elias-Zacarias*, 502 U.S. at 481 (1992); *see* 8 U.S.C. § 1158(b)(1)(B)(i) (alien bears the burden of demonstrating he is a refugee). A "refugee" is one who is unable or unwilling to return to his or her country because of persecution or a well-founded fear of persecution on

13

account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A); *Hong Fei Gao v. Sessions*, 891 F.3d 67, 75-76 (2d Cir. 2018). Withholding of removal is a similar form of relief, but it is mandatory and requires the alien to meet a higher burden of proof than asylum. 8 U.S.C. § 1231(b)(3)(A); *INS v. Stevic*, 467 U.S. 407, 413 (1984); *Vanegas-Ramirez v. Holder*, 768 F.3d 226, 237 (2d Cir. 2014). To qualify for withholding of removal, the alien bears the burden of proving a "clear probability," *i.e.*, that it is "more likely than not," that he would suffer persecution upon return. *Stevic*, 467 U.S. at 429-30; *Melgar de Torres v. Reno*, 191 F.3d 307, 311-12 (2d Cir. 1999). "[T]he applicant must establish [that the protected ground] was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i); *Quituizaca v. Garland*, 52 F.4th 103, 114 (2d Cir. 2022) (applying the "one central reason" motive standard to both asylum and withholding of removal claims); *Castro v. Holder*, 597 F.3d 93, 100 (2d Cir. 2010). Further, when persecution is feared at the hands of private actors, the government must be unable or unwilling to control the would-be persecutors. *Singh v. Garland*, 11 F.4th 106, 114 (2d Cir. 2021) (quoting *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020)). Such an instance is limited to where government authorities "perpetrate[d] or incite[d] the

14

persecution, condoned it or at least demonstrated a complete helplessness to protect the victims." *Id.* (quoting *Galina v. INS*, 213 F.3d 955, 958 (7th Cir. 2000)).

## III. Petitioners Abandoned Any Challenge to the Agency's Dispositive Past Persecution and Well-Founded Fear Findings By Failing To Meaningfully Address Them in their Opening Brief

The agency determined that Petitioner failed to demonstrate that she suffered harm sufficiently severe to rise to the level of persecution and that she failed to demonstrate a well-founded fear of future persecution where she could reasonably relocate within Guatemala. AR 4 (adopting and affirming the immigration judge's decision); AR 83-84. When taken together, these two findings are dispositive of Petitioner's application for asylum and withholding of removal. *See* 8 U.S.C. § 1101(a)(42) (requiring an asylum applicant to establish either past persecution or a well-founded fear of future persecution); *see also Meas v. Mukasey*, 292 F. App'x 78, 80 (2d Cir. 2008) (unpub.) (declining to address additional alternative issues because the agency's conclusion that applicant failed to establish both past persecution and a well-founded fear "is dispositive"). Petitioner abandoned

15

any challenge to these dispositive determinations by failing to address them in her opening brief.[7]  *See* Petitioner's Brief 22-61.

Under Fed. R. App. P. 28(a)(8)(A), the argument in a petitioner's brief must contain her "contentions and the reasons for them, with citations to the authorities and parts of the record on which [she] relies."  This Court considers abandoned, and thus does not reach, any claims "not adequately presented" in a petitioner's brief.  *Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("We consider abandoned any claims not adequately presented in an appellant's brief, and an appellant's failure to make legal or factual arguments constitutes abandonment.") (internal quotation marks omitted); *Alom v. Whitaker*, 910 F.3d 708, 714 (2d Cir. 2018) (stating that, because the petitioner "fail[ed] to assert a meaningful challenge to the BIA's denial of his motion to reopen and reconsider, he [] abandoned review of that decision").  This is because, under the "party-presentation rule," courts "decide only questions presented by the parties" and may play only "a modest initiating role" in shaping the arguments before them.  *United States v. Graham*, 51 F.4th 67, 80 (2d Cir. 2022) (internal quotation marks omitted) (quoting *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020)

---

[7]  Petitioners also failed to exhaust these issues by presenting them to the Board, *see* AR 18-29, though the Board nonetheless adopted and affirmed the immigration judge's findings in this regard, AR 4.

16

(stating that, "in both civil and criminal cases . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present")).

Petitioner fails to meaningfully challenge the agency's dispositive past persecution and well-founded fear determinations. Indeed, Petitioner devotes the bulk of her brief to challenging the agency's determinations regarding the legal cognizability of her proposed groups, nexus, and the government's ability or willingness to control her alleged persecutors. *See generally* Pet's Br. 22-61. However she does not advance any argument challenging the immigration judge's determination that she did not suffer harm rising to the level of persecution. *See generally* Pet's Br. 22-61. Similarly, she does not mention, much less challenge, the immigration judge's determination that she failed to demonstrate a well-founded fear of future persecution where she could reasonably relocate elsewhere in Guatemala. *See generally* Pet's Br. 22-61. Accordingly, Petitioner abandoned any challenge to the agency's past persecution and well-founded fear determinations. *See Debique*, 58 F.4th at 684; *Alom*, 910 F.3d at 714. As Petitioner abandoned any challenge to these dispositive bases for the denial of asylum and withholding of removal, the Court should uphold the

17

agency's decision without addressing any additional issues.[8] *See Bagamasbad*, 429 U.S. at 25; *Bhagtana v. Garland*, 93 F.4th 592, 595 (2d Cir. 2023) (ability to relocate within country is "dispositive" to asylum and withholding of removal claims); *Meas*, 292 F. App'x at 80.

---

[8] Should the Court nonetheless reach these issues, the agency's past persecution and well-founded fear determinations are supported by substantial evidence. As the agency properly determined, the harm Petitioner described in Guatemala did not meet the level of persecution where her cumulative claim amounted to two threatening notes or extortion attempts and general discrimination against women in the workforce. AR 4, 83; *see Mei Fun Wong v. Holder*, 633 F.3d 64, 72 (2d Cir. 2011) ("We have emphasized that persecution is an extreme concept that does not include every sort of treatment our society regards as offensive."); *see, e.g.*, *Zhao v. Wilkinson*, 844 F. App'x 389, 391-92 (2d Cir. 2021) (unpub.) (past persecution not established where police beat applicant on back with baton and petitioner not seriously injured and did not seek medical treatment); *Niazou v. Holder*, 393 F. App'x 825, 826 (2d Cir. 2010) (unpub.) (allegations of employment discrimination did not compel a finding of persecution). Additionally, substantial evidence supports the agency's determination that Petitioner failed to demonstrate a well-founded fear of persecution where she could reasonably relocate in Guatemala, as she successfully relocated to live with her mother-in-law for six months without incident. AR 4, 83-84; *Delgado Coro v. Bondi*, No. 24-1636, 2025 WL 2416198, at *1 (2d Cir. Aug. 21, 2025) (unpub.) (upholding denial of asylum and withholding of removal where agency relied upon, *inter alia*, fact that petitioners relocated without harm to determine that they could safely and reasonably relocate within Ecuador to avoid future persecution); *Surinder Singh v. Board of Immigration Appeals*, 435 F.3d 216, 219 (2d Cir. 2006) (upholding denial of withholding of removal where record demonstrated that petitioner could relocate safely elsewhere in India).

**IV.** **Substantial Evidence Supports the Agency's Denial of Petitioner's Application for Asylum and Withholding of Removal**

**A.** **Substantial Evidence Supports the Agency's Dispositive Determination that Petitioner Failed to Establish a Nexus to a Protected Ground**

Substantial evidence supports the agency's determination that Petitioner failed to meet her burden of demonstrating a nexus between the gang's threats and extortion efforts and a protected ground. AR 4, 80-81; *see* 8 U.S.C. § 1252(b)(4)(B); *Yu v. Holder*, 693 F.3d 294, 298 (2d Cir. 2012) (agency's nexus determination is a factual inquiry and is reviewed for substantial evidence). Petitioner fails to point to anything in the record that would compel a contrary conclusion. *See Ming Dai*, 593 U.S. 365; *see generally* Petitioner's Opening Brief ("Pet's Br.") 39-48.

Notwithstanding Petitioners' arguments to the contrary, the agency considered the testimony and relevant evidence. *See* AR 3-5, 75; *contra* Pet's Br. 45-48. Indeed, the immigration judge explicitly noted that she "considered all of th[e] evidence in its entirety regardless of whether specifically mentioned in the text of [her] decision." AR 75. Similarly, the Board considered and engaged with the record evidence while addressing Petitioners' appellate arguments. AR 3-5. Moreover, this Court has explained that it does not require the agency to "'expressly parse or refute on the record each and every' piece of evidence, and . . . [presumes that the

19

agency] has taken into account all the evidence before [it], unless the record compellingly suggests otherwise." *Gonzalez-Benitez v. Lynch*, 653 F. App'x 69, 71 (2d Cir. 2016) (unpub.) (quoting *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 336 n.17 (2d Cir. 2006)). Petitioner fails to make such a showing.

Instead, Petitioner failed to establish that at least one central reason for her past harm and feared future harm was her membership in her proposed particular social groups. [9] *See* 8 U.S.C. § 1158(b)(1)(B)(i) (alien bears the burden of demonstrating that a statutorily protected ground such as membership in a particular social group "was or will be at least one central reason for persecuting the applicant"); *Garcia-Aranda v. Garland*, 53 F.4th 752, 757-58 (2d Cir. 2022) (evidence that gang members targeted family because they "perceived them to have wealth" "supplie[d] substantial

---

[9] Although Petitioner advanced a political opinion claim before the immigration judge, she failed to exhaust and waived or abandoned that aspect of her claim before this Court by failing to advance any argument on this point in both her appeal to the Board and her brief filed with this Court. *See* AR 12-33 (brief to Board focusing argument on the legal cognizability of Petitioner's proposed social groups and omitting any substantive argument regarding a political opinion claim); Pet's Br. 22-61 (same). As such, the Court need not and indeed, should not, reach this issue. *See* 8 U.S.C. § 1252(d)(1); *Ud Din v. Garland*, 72 F.4th 411, 419 (2d Cir. 2023) (observing that the exhaustion requirement is a mandatory claim-processing rule that must be enforced if properly raised); *O'Rourke v. United States*, 587 F.3d 537, 542 (2d Cir. 2009) (arguments not made in an appellant's opening brief are deemed waived).

evidence" for the agency's no-nexus finding); *Quituizaca v. Garland*, 52 F.4th 103, 114-15 (2d Cir. 2022) ("A protected ground cannot be 'incidental' or 'tangential' to another reason for harm.") (footnote and citation omitted). Here, substantial evidence supports the agency's conclusion that the threats and extortion experienced by Petitioner were exclusively motivated by gang members' desire for economic or financial gain, and not on account of any protected ground. *See Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 74 (2d Cir. 2007) ("When the harm visited upon members of a group is attributable to the incentives presented to ordinary criminals rather than to persecution, the scales are tipped away from considering those people a 'particular social group.'"); *see also Gonzalez-Polanco v. Rosen*, 839 F. App'x 639, 641 (2d Cir. 2021) (unpub.) ("the record reflects that the gang members' motivation was financial gain, not to harm her on account of a protected ground); *Varela-Lopez v. Sessions*, 695 F. App'x 1, 3 (2d Cir. 2017) (unpub.) ("Because the record evidence does not indicate that either female victims of extortion or members of Varela-Lopez's family are at greater risk of harm than other individuals in Honduras, Varela-Lopez failed to establish that she was harmed or faces harm on account of her membership in a cognizable social group as required for withholding of removal"); *Can v. Holder*, 606 F. App'x 610, 612 (2d Cir.

21

2015) (unpub.) (finding no nexus to a protected ground where "[n]o evidence shows that the armed individuals threatened him for any reason other than pecuniary gain, let alone because of his political opinion or another protected ground").

Indeed, Petitioner's declaration and testimony indicate that gang members extorted her because they believed she had money. *See* AR 419-20. Specifically, Ms. Cid-Bantes testified that gang members target "people that have money," and although she noted that gang members might first target a woman because they perceive her to be an easier target than a man, she also acknowledged that ultimately gangs extort "everyone" in Guatemala. AR 158. She also wrote that she believed gang members "t[ook] notice" of the fact that she began renovating her home, rode a motorcycle, and wore an "elegant suit" to work every day. *Id.* She indicated that these factors could have caused gang members to believe that "she ha[d] resources to pay for extortion without any problem." AR 419; *see* AR 157 ("For them [owning a motorcycle is] a sign that we have money"). Similarly, even to the extent that gang members were aware that Ms. Cid-Bantes' husband resided in the United States, this awareness is only relevant to the extent that it may have informed the gang's belief that Ms. Cid-Bantes possessed the economic resources to make her a profitable target

22

for extortion; Petitioner identifies nothing in the record to suggest that gang members held any animus toward or were motivated by Ms. Cid-Bantes' membership in a group of Guatemalan women with husbands in the United States. *See* AR 420 (mentioning her husband's presence in the United States as one of several factors that made her "the perfect target" for gang members to extort); *Elias-Zacarias*, 502 U.S. at 483; *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 157-58 (2d Cir. 2008) ("[W]hen a petitioner bears the burden of proof, his failure to adduce evidence can itself constitute the 'substantial evidence' necessary to support the agency's challenged decision."); *Garcia-Aranda*, 53 F.4th at 757-58.

Additionally, as the immigration judge observed, the timing of the extortion attempts further supports the conclusion that the gang members were exclusively motivated by a desire for economic gain where Petitioner was extorted for the first time shortly after she began renovating her home, actions which Petitioner acknowledged would publicly signal that she "ha[d] resources to pay for extortion without any problem." AR 419; *see* AR 80-81 (highlighting the timing of threats as relevant to the nexus analysis); AR 146 (testifying that she was first threatened around September 14, 2018); AR 419 (stating that she began renovating her home at the end of August 2018). Accordingly, Petitioner's testimony supports the agency's determination that

23

Petitioner was a victim of general criminality by criminal actors who were motivated by their desire for economic gain. *See Garcia-Aranda*, 53 F.4th at 757-58; *Melgar de Torres*, 191 F.3d at 313-14 (noting that "persecution must be on account of an enumerated ground set forth in the Act" and that "general crime conditions are not a stated ground").

Petitioner provided no compelling evidence that gang members' extortion efforts and threats were motivated by her membership in particular social groups of "educated Guatemalan women," "educated Guatemalan women with young children," or "Guatemalan women with husbands in the United States" and she fails to point to anything to compel a contrary conclusion. Indeed, although Petitioner testified that she believed that the gang went after her because she was a woman who was alone, the immigration judge was not required to adopt her beliefs regarding the alleged persecutor's motive, even taking her testimony as credible. *Ming Dai*, 593 U.S. at 371 ("even if the B[oard] treats an alien's evidence as credible, the agency need not find his evidence persuasive or sufficient to meet the burden of proof"). Furthermore, Petitioner's opinion that the gang targeted her because of her gender does not bridge the gap to demonstrate that the gang was motivated by her membership in her proposed particular social groups, which rely on additional factors such as her education status

24

and her husband's residence in the United States. *See Gonzalez-Carias v. Garland*, 855 F. App'x 52, 53 (2d Cir. 2021) (unpub.) (requiring "some indication" of animus against members of proposed particular social group); *Matter of C-I-R-H- & H-S-V-R-*, 29 I. & N. Dec. 114, 116 (BIA 2025) (observing that to satisfy the nexus requirement, "there must be some showing of a connection beyond speculation such that the alleged harm is not solely stemming from statistical likelihoods or unfortunate coincidence"). Additionally, Petitioner's arguments regarding a "pattern [of] targeting women who lack effective male protection," miss the mark because she did not advance a particular social group claim of "women who lack effective male protection" and any attempt to raise such a claim before this Court in the first instance should be rejected as improperly presented. *See* Pet's Br. 41-45; *Lin Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 107 n.1, 122-24 (2d Cir. 2007); *Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. 189, 191-92 (BIA 2018).

Petitioner's argument that the agency failed to conduct the proper legal analysis for nexus is similarly misguided and lacks merit. *See* Pet's Br. 39-41. Contrary to Petitioner's assertions, the immigration judge did not automatically conclude that "because the MS-13's conduct was 'criminal activity' in nature, it could not constitute persecution on account of a

25

protected ground." Pet's Br. 40. Rather, the immigration judge considered Petitioner's testimony and circumstantial evidence in the record regarding the alleged persecutor's motivation and found that the gang extorted Ms. Cid-Bantes because "she had income to which they could gain access through their threats." AR 81. Rather than prematurely concluding the analysis, the immigration judge also considered whether Petitioner's membership in her particular social groups was one central reason for the persecution she suffered or feared but properly concluded that there was insufficient evidence to indicate a nexus to her proposed social groups. AR 81; *see Ameen v. Holder*, 450 F. App'x 35, 37 (2d Cir. 2011) (unpub.) (rejecting argument that the agency erred by failing to consider possibility of mixed motives where the agency considered whether the applicant's political affiliation was one of the motives behind the harm he suffered); *Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2006) (explaining that the Court presumes that the immigration judge has considered the full record "unless the record compellingly suggests otherwise").

In sum, the agency's denial of Petitioner's asylum and withholding of removal claims for failure to establish a nexus to a protected ground is supported by substantial evidence. Because failure to demonstrate nexus is

26

dispositive to a noncitizen's asylum claim, the Court need not reach any other determinations or consider any other arguments and may deny the petition for review based on this issue alone. *See Mejia-Ruiz v. Wilkinson*, 846 F. App'x 67, 69 (2d Cir. 2021) (unpub.) (failure to meet the "on account" requirement is dispositive of both asylum an withholding of removal applications); *INS v. Bagamasbad*, 429 U.S. 24, 25-26 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."). As Petitioner has not met her burden to prove her eligibility for asylum, she "necessarily fails" to meet her burden for withholding of removal. *Lecaj v. Holder*, 616 F.3d 111, 119 (2d Cir. 2010).

**B.** **Controlling Law and Substantial Evidence Supports the Agency's Conclusion That Petitioner's Proposed Particular Social Groups Are Not Legally Cognizable**

Alternatively, no reasonable factfinder would be compelled to conclude that Petitioner's proposed particular social groups are legally cognizable because they are not defined by an immutable characteristic, lack particularity, or are not socially distinct in Guatemalan society. AR 4, 78-80. Should the Court reach this independently dispositive issue, it may deny

27

the petition for review on this basis alone.[10] *See Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014); *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014).

To demonstrate the cognizability of a particular social group, an applicant must show that the group is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 235. To satisfy the immutability requirement, Petitioner must show that the group's members share a characteristic that they "'either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.'" *Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007) (quoting *Matter of A-M-E- & J-G-U-*, 24 I. & N. Dec. 69, 74 (BIA 2007)); *see Matter of Acosta*, 19 I. & N. Dec. 211, 234 (BIA 1985), *overruled in part on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987).

---

[10] Because the Court may dispose of this petition for review by relying on Petitioner's abandonment of dispositive issues or either one of the agency's dispositive determinations regarding nexus or cognizability, it need not reach the alternative issue of whether Petitioner demonstrated that the Guatemalan government was or would be unable or unwilling to control her alleged persecutors. *See INS v. Bagamasbad*, 429 U.S. 24, 25-26 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

To satisfy the particularity requirement, a particular social group "must be defined by characteristics that provide a clear benchmark for determining who falls within the group" such that this line-drawing creates a group that the applicant's society recognizes. *Matter of M-E-V-G-*, 26 I. & N. Dec. at 239; *Matter of W-G-R-*, 26 I. & N. Dec. at 214; *see Ucelo-Gomez*, 509 F.3d at 73. Particularity thus encompasses concepts that a proposed group cannot be loosely-defined or indeterminate, must have clear defining attributes, and mist be discrete; "it must not be amorphous, overbroad, diffuse, or subjective." *Matter of W-G-R-*, 26 I. & N. Dec. at 214; *Paloka v. Holder*, 762 F.3d 191, 196 (2d Cir. 2014).

To establish that a proposed group is "socially distinct," the applicant must show that her proposed group is perceived as set apart in her home country at large. *Matter of M-E-V-G-*, 26 I. & N. Dec. at 238. An applicant need not show that her proposed group is outwardly, literally, or "ocularly" visible. *Id.* at 238-40. Rather, she must prove that her group is "understood to exist as a recognized component" of her society. *Id.* at 239.

### 1. Petitioner's Proposed Groups of "Educated Guatemalan Women" and "Educated Guatemalan Women with Young Children" Are Not Legally Cognizable

Substantial evidence supports the agency's determination that Petitioner's proposed particular social groups of "educated Guatemalan women" and "educated Guatemalan women with young children" are not legally cognizable because they are not defined with the requisite particularity and there is insufficient record evidence to demonstrate that these proposed groups are perceived as socially distinct in Guatemalan society.[11]  AR 4, 78-80.

First, the agency correctly concluded that Petitioner's proposed groups of "educated Guatemalan women" and "educated Guatemalan women with young children" were not defined with sufficient particularity. *Id.*  Indeed, much like the characteristic of being "wealthy," which this Court has uniformly rejected as too subjective to provide an adequate benchmark for defining a particular social group, the characteristic of being "educated" lacks particularity because the baseline for how much education would be required in order for an individual to be considered "educated" is variable,

---

[11]  The immigration judge also concluded that Petitioner's proposed group of "Guatemalan women with young children" is not defined by a common, immutable characteristic.  AR 78.  As the particularity and social distinction findings are independently dispositive to the cognizability analysis, the Court need not reach this alternative finding. *Bagamasbad*, 429 U.S. at 25.

30

subjective, and obfuscates the clear delineation of boundaries for membership within the group. *See* AR 79; *Ucelo-Gomez*, 509 F.3d at 73-74 (rejecting a proposed social group defined by affluence). Further, Petitioner failed to present evidence suggesting that Guatemalan society has defined what it means to be "educated" such that the boundaries for her proposed groups would be recognizable. *See generally* AR 188-322; *Ramirez v. Barr*, 773 F. App'x 638, 640 (2d Cir. 2019) (unpub.) (concluding that petitioner's proposed group of "educated, Honduran women with high-ranking positions" was not defined with the requisite particularity); *see also Ucelo-Gomez*, 509 F.3d at 73 ("If 'wealth' defined the boundaries of a particular social group, a determination about whether any petitioner fit into the group (or might be perceived as a member of the group) would necessitate a sociological analysis as to how persons with various assets would have been viewed by others in their country").

Second, substantial evidence supports the agency's conclusion that the record does not demonstrate that these proposed groups are perceived as set apart in Guatemalan society. AR 4, 78-80; *see Paloka*, 762 F.3d at 196-97. In the opening brief, Petitioner contends that there is "substantial record evidence" demonstrating that her proposed groups are socially distinct in Guatemala but fails to cite any record evidence that supports this assertion.

31

Pet's Br. 29; *see* Pet's Br. 28-30, 32-33. For example, Petitioner's testimony and country report discussing discrimination against women generally in Guatemala, does not speak to Guatemalan society's perceptions of the specific subsets of "educated Guatemalan women" and "educated Guatemalan women with young children." *See* Pet's Br. 28-30, 32-33. Petitioner also asserts that she was visible to her alleged persecutors as an educated Guatemalan woman because of her "professional dress and employment." Pet's Br. 29. But to the extent that Petitioner appears to contend that visibly dressing in professional attire satisfies the social distinction requirement, she misunderstands that social distinction does not depend on ocular visibility. *See Matter of W-G-R-*, 26 I. & N. Dec. 208, 212 (BIA 2014) (clarifying that social distinction does not require "'ocular' or 'on-sight,' visibility"). And even assuming *arguendo* that Petitioner's alleged persecutors were aware of her education status, it is well established that whether a social group is recognized as socially distinct "is determined by the perception of the society in question, *rather than by the perception of the persecutor.*" *M-E-V-G-*, 26 I. & N. Dec. at 242 ("the [criminals'] perception is not itself enough to make a group socially distinct"); *see Paloka*, 762 F.3d at 196. Accordingly, Petitioner fails to identify anything that would compel a contrary conclusion to that reached by the agency.

<div align="center">32</div>

**2.    Petitioner's Proposed Group of "Guatemalan Women with Husbands in the United States" Is Not Legally Cognizable**

Substantial evidence supports the agency determination that Petitioner's proposed group of "Guatemalan women with husbands in the United States" is not legally cognizable because it is not composed of members who share a common immutable characteristic and the record does not demonstrate that it is socially distinct.  AR 4, 78-80.

First, although gender and nationality are generally recognized as immutable characteristics, Petitioner does not allege that she was persecuted for being a Guatemalan woman; rather, she advances a claim based on her status as a Guatemalan woman *whose husband is in the United States*.  *See generally Matter of Acosta*, 19 I. & N. Dec. at 233.  Petitioner invokes gender and marital status as talismans of immutability but conveniently fails to reckon with the fact that the remaining defining characteristic of her proposed group—having a husband who is in the United States—is not an immutable characteristic.  *See generally Matter of Acosta*, 19 I. & N. Dec. at 233.  Indeed, Petitioner cites no evidence to support the premise that having a husband in the United States is fundamental to her identity.  *See generally* Pet's Br. 34-35.  Furthermore, the geographical location of an individual is not immutable because a person's location is subject to change.  *See Matter of Acosta*, 19 I. & N. Dec. 211, 234 (BIA 1985) (explaining that a

characteristic is not immutable where it is something group members have the power to change), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987); *see also*, *Carmona v. Holder*, 457 F. App'x 32, 34 (2d Cir. 2012) (unpub.) (social group based in part on "connection to the United States" "cannot constitute a cognizable social group because such a characteristic is not immutable").

In any event, the agency appropriately concluded that Petitioner failed to meet her burden to show that her proposed group of "Guatemalan women with husbands in the United States" is socially distinct, where she did not introduce evidence to demonstrate that Guatemalan society perceives members to be a meaningfully distinct group. AR 4, 78-80. Petitioner's opening brief asserts that her neighbors were aware that her husband was in the United States and that this fact is evidence of social distinction, but her neighbors' purported awareness of her individual personal circumstances is not reflective of whether Guatemalan society as a whole perceives "Guatemalan women with husbands in the United States" to be a meaningfully distinct group. *See* Pet's Br. 36. Furthermore, as discussed *supra*, the perceptions of Petitioner's alleged persecutors, gang members, are also not determinative of Guatemalan society's views for purposes of social distinction. *See Paloka*, 762 F.3d at 196 ("[W]hat matters is whether society

34

as a whole views a group as socially distinct, not the persecutor's perception." (citing *Matter of M-E-V-G-*, 26 I. & N. Dec. at 242)).

Indeed, in this case, Petitioner has not provided *any* evidence that would compel the sole conclusion that Guatemalan "society as a whole" perceived those holding the characteristics described in this particular social group as distinct. *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 590 (2d Cir. 2021). The Court should therefore deny this petition for review based on the agency's independently dispositive determination that Petitioner's proposed particular social groups are not legally cognizable. *See Paloka*, 762 F.3d at 195; *Matter of M-E-V-G-*, 26 I. & N. Dec. at 237.

## **CONCLUSION**

For the foregoing reasons, this Court should deny the petition for review.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

SHERI R. GLASER
Acting Assistant Director
Office of Immigration Litigation

/s/ Kristen H. Blosser
KRISTEN H. BLOSSER
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 305-1060

January 5, 2026            Attorneys for Respondent

36

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7), I certify that the

Brief for Respondent:

(1) was prepared using Times New Roman 14 type font; and

(2) contains 7,630 words of text.

/s/ Kristen H. Blosser

KRISTEN H. BLOSSER
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 305-1060
January 5, 2026                Attorneys for Respondent

## <u>CERTIFICATE OF IDENTICAL TEXT AND VIRUS CHECK</u>

I certify that the text of the electronic brief is identical to the text in the paper copies. I also certify that the foregoing electronic version of Respondent's brief has been scanned for viruses and no virus has been detected.

<div style="margin-left:40%">

/s/ Kristen H. Blosser
KRISTEN H. BLOSSER
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 305-1060

</div>

January 5, 2026                    Attorneys for Respondent

## CERTIFICATE OF SERVICE

I certify that on January 5, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate ACMS system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Kristen H. Blosser
KRISTEN H. BLOSSER
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 305-1060

January 5, 2026      Attorneys for Respondent